UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAY VICTOR BOYD,                          :
ALSO KNOWN AS I-NOBLE                     :
RA'SUN ALLAH,                             :
        Plaintiff,                        :
                                          :
        v.                                :        Case No. 3:21cv01252 (VLB)
                                          :
D. WALKER, WARDEN ET AL.,                 :
        Defendants.                       :

<u>INITIAL REVIEW ORDER</u>

Plaintiff Ray Victor Boyd, also known as I-Noble Ra'Sun Allah ("Boyd"),
is an inmate confined within the custody of the Connecticut Department of
Correction ("DOC") who is proceeding *pro se* in this action.  The facts of this
case relate to the DOC losing Mr. Boyd's medical mouthguard for sleeping,
which was lost while he was hospitalized for COVID-19 and never returned.  He
asserts an Eight Amendment constitutional violation for deliberate indifference
to his medical needs, under 42 U.S.C. § 1983, against Cheshire Correctional
Institution ("Cheshire") Warden Denise Walker; Cheshire "CHNS" Vincent
Santavere; Cheshire "CHN" Debra Cruz; "Regional COO" for Cheshire Kirsten
Shea; Cheshire dentist, Dr. Fisher; Director of Dental, Dr. Kasabi; and Cheshire
dental assistant, Borchert; all in their individual and official capacities.  Dkt. 1
(Compl. & Exs. A-H). For the following reasons, Mr. Boyd's deliberate
indifference claims may proceed as to Defendants Walker, Santavere, Fisher,
Kasabi, and Borchert.

I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible

2

if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555–57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely."  *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## II.   FACTS

On December 2, 2020, Mr. Boyd fell ill with COVID-19 and was sent to medical for a rapid test.  *See* Dkt. 1 ¶ 1.  From there, he was informed he must quarantine before he could return to his housing unit and, accordingly, it became the Department of Correction ("DOC") responsibility to pack up and secure his property.  *See id.*

3

Three days later, Mr. Boyd was rushed to the hospital for pneumonia where he stayed until December 13, 2020.  *See id.* ¶ 3.  Upon hospital discharge, Mr. Boyd was placed in McDougall-Walker Correctional Institution ("MacDougall") for six days.  *See id.* ¶¶ 4-5.  He was informed that he could not obtain his property, including his mouthguard for sleeping, until he returned to his Cheshire housing unit.  *See id.* ¶ 5.

Mr. Boyd returned to Cheshire but was initially placed in quarantine.  *See id.* ¶¶ 5-6.  On December 20, 2020, he contacted his family for assistance in obtaining his property and mouthguard.  *See id.* ¶ 8.  Cheshire returned Mr. Boyd to general population on December 23, 2020, and it was not until the following day that he received his property.  *See id.* ¶¶ 6, 8-9.  Mr. Boyd discovered that his mouthguard was missing.  *See id.*

Mr. Boyd requires a mouthguard for sleeping because, without it, he will experience pain, sleep deprivation, constant headaches, biting his tongue and the "lining of his jaw," and grinding his teeth.  *See id.* ¶ 10.  On December 29, he wrote to Medical/Dental informing them of the missing mouthguard and requesting a replacement as soon as possible to avoid the above symptoms.  *Id.*

In early January 2021, dental staff informed Mr. Boyd that he would have to wait three to four months before the issue could be addressed.  *See* ¶ 11.  On March 29, 2021, Mr. Boyd received an examination from Defendants Dr. Fisher and Dental Assistant Borchert but was informed that, because he was responsible for the mouthguard, he could not receive a replacement for five

4

years.  *See id.* ¶ 12.  When Mr. Boyd explained that he was not responsible for the lost mouthguard given the circumstances, they instructed him to file a Lost/Damaged Property Investigation Form, which he filed that day.  *See id.* ¶¶ 14-15.  They further informed him that he would have to deal with the pain until the outcome of the investigation.  *See id.*  That same day, Defendant Dr. Fisher emailed Defendant Director of Dental, Dr. Kasabi, concerning a new mouthguard for Mr. Boyd.  *See id.* ¶ 13.

Mr. Boyd did not receive a response for 57 days.  *See id.* ¶ 16.  When he did, Defendant Warden Walker stated:

> This property investigation regarding your missing dental mouth guard was reviewed and investigated.  It was found that the CCI dental department was notified of your missing dental mouth guard and a course of action was discussed between you and the dentist for the mouth guard to be replaced.  Therefore, this property investigation is upheld in part.

*See id.* at Ex. C (CN 9609 3/29/21 and Response 5/27/21).

On June 26, 2021, Mr. Boyd wrote to Defendant CHNS Vincent Santavere, requesting assistance in procuring a new mouthguard.  *See id.* ¶ 17.  He explained that he had been experiencing pain for seven months.  *See id.*

On August 4, 2021, Mr. Boyd's significant other, Jaqueline ("Jackie") James, contacted Defendants Warden Walker and Shea  on Mr. Boyd's behalf. *See id.* ¶ 18 & Ex. D (Ltr. James 8/4/21).  She explained that Mr. Boyd "is now suffering from headaches and jaw pain due to excessive teeth grinding which appears to be anxiety or stress induced."  *Id.* at Ex. D.

Also on August 4, 2021, Mr. Boyd filed a Health Services Administrative

Remedy regarding his lost mouthguard and the DOC's failure to give him medical attention.  *See id.* ¶ 19 & Ex. F (CN 8901) He explained the mouthguard was lost by Cheshire staff, that he submitted a lost/stolen property form, and that he has been experiencing pain and headaches for eight months due to the delay.  *See id.* at Ex. F.

Mr. Boyd alleges that Defendant CHO Cruz "worked in concert with dental staff" to uphold his remedy request insofar as she allowed Dr. Fisher to investigate the matter.  *See id.* ¶ 20.  The Health Service Administrative Remedy disposition, written by Dr. Fisher on August 11, 2021, states: "The request for approval for a new nightguard was submitted to Dr. Kasabi, Dental Director, on March 29, 2021.  Approval from Dental Director was received August 5, 2021." *See id.* at Ex. F. Despite the approval, it does not appear Mr. Boyd has received his mouthguard.

### III.  DISCUSSION

Mr. Boyd claims that Defendants  violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs for a night mouthguard.   Compl. ¶ 8.

#### A.  Deliberate Indifference

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment of sentenced prisoners. *See* U.S. Const. amend. VIII.  The U.S. Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97 (1976), that "deliberate indifference to serious medical needs of prisoners

constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted). The Supreme Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of "deliberate indifference to [a prisoner's] serious medical needs." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). To prevail on such a claim, a plaintiff must prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hill*, 657 F.3d at 123.

### 1.     Objective Component

It is well-established that inadequate dental care can constitute a cognizable deliberate indifference claim. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Whether a claim is cognizable is dependent on several factors,

including the plaintiff's pain, "deterioration of the teeth due to a lack of treatment," or "the inability to engage in normal life activities." *Id.* Significant delay in dental care can also lead to a deliberate indifference claim. *See Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (acknowledging delays ranging five and a half months to one year all can constitute deliberate indifference).

Here, Mr. Boyd has alleged he has been deprived a mouthguard for nine months, leading to pain, sleep deprivation, constant headaches, biting his tongue and the "lining of his jaw," and grinding his teeth. *See id.* ¶ 10.  His significant other corroborates his symptoms, including headaches and jaw pain. *See id.* Ex. E.  Grinding can lead to deterioration of the teeth and, if left untreated, could impact his daily functioning, including eating.  Accordingly, the denial of Mr. Boyd's night mouthguard is "sufficiently serious" to satisfy the objective component.

2.      Subjective Component

Relevant to the subjective component of the Eighth Amendment analysis, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions.  *See Salahuddin,* 467 F.3d at 280; *Amaker v. Coombe,* No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate a prisoner's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or

8

fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.").

Here, Mr. Boyd alleges seven Defendants violated his right to medically necessary treatment, albeit for different reasons. The <u>first group</u> includes those who participated in Mr. Boyd's dental care: Dr. Fisher, Dental Assistant Borchert, and the Director of Dental, Dr. Kasabi. Mr. Boyd alleges Defendants Dr. Fisher and Dental Assistant Borchert examined him but stated that he could not obtain a replacement mouthguard for five years unless he filed a Lost/Damaged Property Investigation Form. *See Compl.* ¶¶ 12-15. They also informed him that he would need to deal with the pain until the investigation concluded. *See id.* Dr. Fisher thereafter emailed Dr. Kasabi requesting a new mouthguard. Nothing happened for 57 days—at which point it had been nearly eight months—until Dr. Kasabi finally issued the approval. *See id.* Ex. F. But the mouthguard never arrived. These individuals were subjectively aware of the medical need, as evidenced by their acknowledgement that he is approved for a mouthguard alongside their failure to procure it. Until he receives the mouthguard, their direct participation in the delayed treatment satisfies the subjective component of the deliberate indifference claim.

The <u>second group</u> includes supervisory officials who did not provide care: Defendants Walker, Santavere, and Shea. Recently, in *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020), the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of

constitutional rights.  The Second Circuit explained: "[A]fter *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' …. The violation must be established against the supervisory official <u>directly</u>."  *Id.* at 618 (emphasis added) (quoting *Ashcroft*, 556 U.S. at 676).  After *Tangreti*, Plaintiff must allege facts showing that a defendant or defendants personally "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  983 at 618-19.

Based on the *Tangreti* standard, Mr. Boyd has satisfied the subjective component as to Defendants Walker and Santavere but not Defendant Shea.  Mr. Boyd submitted Exhibits that establish Defendants Walker and Santavere acknowledged receipt of Mr. Boyd's grievances and stated they forwarded the mouthguard requests to dental.  *See* Compl. at Exs. C-E.  But once deciding to participate in the process, they did not follow-up or otherwise ensure Mr. Boyd obtained his mouthguard.  *See id.*  In reading the complaint in a manner most favorable to Mr. Boyd, their participation in the grievance process that has so far gone nowhere is sufficient to establish the subjective component.

Defendant Shea is merely CC'd on—but does not respond to—an email from Ms. James complaining about delayed treatment.  *See id.* at Ex. E.  As a general matter, merely alleging that a defendant <u>received</u> an inmate's letter or

10

complaint is insufficient to establish the official's personal involvement, let alone failing to allege that Defendant even received the letter or complaint at all.   *See, e.g., Evans v. Barone*, 3:22CV00074(SALM), 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (finding no personal involvement when the plaintiff "alleges only that [defendant] failed to take any action based on a letter or letters he wrote to them; he does not even allege that they received the letters"); *Delaney v. Perez*, No. 19-CV-6084 (NSR), 2021 WL 3038642, at *3 (S.D.N.Y. July 16, 2021) (citing cases where mere receipt of complaint, without action, failed to establish personal involvement).   Without more, Mr. Boyd has not satisfied the subjective component for a claim against Defendant Shea.

The third group contains only one Defendant: Defendant Cruz, who is alleged to have permitted Dr. Fisher to write the Health Services Administrative Remedy decision.  *See* Compl. Request for Relief at ¶ 6.  Without any additional facts, Defendant Cruz appears to have done nothing other than permit Mr. Boyd's provider to address his stated medical complaint.  Defendant Cruz's minimal "participation" (i.e. lack of participation) in this case is simply not enough to satisfy the subjective component.

**B. Section 1983 Official Capacity Claims**

The complaint indicates that the claims are brought against all Defendants in their official capacities.  As an initial matter, any claim for damages against defendants in their official capacities must be dismissed as not plausible.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that claims for

money damages against state employees in federal court are barred by the Eleventh Amendment); *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) (state claims against defendants in official capacities are barred under the Eleventh Amendment).

The U.S. Supreme Court recognizes a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit: when a plaintiff sues a state official acting in an official capacity for <u>prospective</u> injunctive relief for <u>continuing</u> violations of federal law.  *See Ex parte Young*, 209 U.S. 123 155–56 (1908).  Simply put, an injunctive relief against a state official in his official capacity only extends to an ongoing violation of the constitutional rights that will happen in the future.  *See, e.g., Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011).  The exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Here, the complaint alleges an ongoing deprivation of his constitutional rights insofar as the Defendants' refusal to provide Mr. Boyd with a mouthguard and/or dental check-up is ongoing.  In the Request for Relief, Mr. Boyd seeks a new mouthguard and dental appointment, which can be properly construed as requesting injunctive relief.  Accordingly, these official capacity claims may go forward.

**ORDER**

(1)   For the foregoing reasons, Plaintiff may proceed on his Eighth Amendment individual and official capacity claims against Defendants Walker, Santavere, Fisher, Kasabi, and Borchert.  All claims against Defendants Shea and Cruz are DISMISSED.

(2)  The clerk shall verify the current work address of Defendants Walker, Santavere, Fisher, Kasabi, and Borchert with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.  If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)  The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4)  Defendants shall file a response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above.  Defendants may also include any and all additional defenses permitted by the Federal Rules.

13

(5)  Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(6)  The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7)  All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(8)  According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(10)   The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court.   Local court rules provide that discovery requests are not filed with the court.   D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.


_____
Vanessa L. Bryant
United States District Judge


**SO ORDERED** at Hartford, Connecticut this 10th day of May, 2022.

15